**SIGNED this 22 day of December, 2005.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EVANS P. WEAVER | ) | CASE NO. 04-14279-FM |
| DEBTOR | ) | (Chapter 7) |

<u>**MEMORANDUM OPINION**</u>

The Court held hearings on the Amended Final Fee Application for Eric R. Borsheim, General Counsel for the Debtor-in-Possession, on September 26, 2005 and upon the Final Fee Application of E. Lee Parsley, P.C., Special Counsel for the Debtor-in-Possession, on November 1, 2005. The Court has jurisdiction to enter final orders in these core matters pursuant to 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b)(1), 28 U.S.C. 151, and the Standing Order of Reference of all bankruptcy matters from the United States District Court for the Western District of Texas.

1

At the conclusion of the hearing on November 1, 2005, the Court instructed both counsel to file amendments to their fee applications so that they would more fully comply with Local Bankruptcy Rule 2016(a)(2) and to file detailed statements quantifying the benefit to the estate with regard to each separate category of services which they had rendered to the estate as the Court must judge such fee applications under *Matter of Pro-Snax Distributors, Inc.*, 157 F.3rd 414 (5th Cir. 1998) which requires such counsel to show that their respective "services resulted in an identifiable, tangible, and material benefit to the bankruptcy estate."

The Court then took the matter under advisement to review the additional amendments to the respective fee applications once received.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rules 7052 and 9014 as to Parsley's Fee Application as well as Borsheim's Fee Application. This is a core proceeding under 28 U.S.C. §157(b)(2).

## **Prologue**

This particular case has been one of the most contentious cases that the Court has been involved with since being licensed as a lawyer in 1969. Hardly a hearing goes by without allegations of fraud, the casting of aspersions with regard to the character of lawyers involved, and generally rude and over-the-top behavior. To

2

say that it has not been a pleasure to preside over this case is one of the bigger understatements the Court could ever make.  Over all, the lack of trust between parties and the animosity between the attorneys has led to an excessive amount of time being spent by all the lawyers which will, in fact, be a factor the Court will use in determining the reasonableness of the fees that are being requested.

## Legal Standards

The Fifth Circuit Court of Appeals has set the standard by which bankruptcy courts must judge all attorneys fees for persons representing the bankruptcy estate.  The Court quite clearly set the standard in the *Matter of Pro-Snax Distributors, Inc.*, 157 F.3d 414, 426 (5th Cir. 1998).  The Court said, "We determined today that the stricter test is the appropriate measure." *Id.*  That stricter test the Court defined as requiring a showing that the services rendered "represented an identifiable, tangible, and material benefit to the estate." *Id.*  In adopting the stricter test, the Fifth Circuit clearly rejected the "reasonableness" test, to-wit: whether the services were objectively beneficial toward the completion of the case at the time they were performed. *Id.*

Applicant Parsley contends that is not what the Fifth Circuit did because of its statement later in the opinion that the lawyers "should have known from the outset that the Debtor's prosecution of Chapter 11 plan would fail, given that the Petitioning Creditors –

3

who collectively held more than 50% of the indebtedness in the case – filed an involuntary Chapter 7 case against the Debtor and repeatedly informed the Debtor and the bankruptcy court that they believed the case should be administered under Chapter 7." *Id.* However, footnote 17 to the foregoing quote explains that statement: "We believe that these facts necessarily should have led A & K to the conclusion that its services were futile, meaning that we would find against A & K even if we today adopted the reasonableness standard that it suggests." *Id.*

From the foregoing, it is clear that Applicant Parsley's interpretation is not correct. The Fifth Circuit simply said that if they had applied the reasonableness test, they still would not have allowed any fees with regard to prosecution of the Chapter 11 plan under the facts of the case. Clearly, the Circuit applied the stricter test in disallowing A & K's fees.

Applicant Borsheim argues that *Pro-Snax* is at odds with the statute and misinterprets it since the statute plainly authorizes fees "for actual, necessary services" – [11 U.S.C. §330(a)(1)(A)] as well as services that are "reasonably likely to benefit the debtor's estate" – [11 U.S.C. 330(a)(4)(a)(ii)(I)]. Even if such be true, this Court is constrained to follow the 5th Circuit's interpretation.

4

### Parsley Fees

Mr. Parsley was involved in three separate matters as special counsel.  They will be discussed separately.

1.  **The Tobin Appeal** - The Tobins obtained a jury verdict against the Debtor pre-petition in the approximate amount of $246,000.00. Mr. Parsley was employed to seek reconsideration and/or appeal of that verdict in January 2004.  He was successful with regard to the elimination of damages against Weaver Interests, an entity apparently owned by the Debtor, but not against Mr. Weaver. The trial court rendered judgment on the jury verdict for approximately $246,000.00.

Post-petition Mr. Parsley has prosecuted the appeal and filed a brief with the state appellate court where the matter pends.

Mr. Parsley's fee application seeks a total amount due of $9,557.06 and reflects payment of $5,271.99 post-petition – apparently from his retainer.

If successful, the Tobin case will be remanded, or perhaps rendered, but the benefit to the estate would be substantial as Parsley argues the correct ruling would be a reversal and the rendering of a take nothing judgment thereby saving the bankruptcy estate $246,000.00.

Under the *Pro-Snax* decision, it is premature to grant fees in this regard.  We simply do not know whether or to what extent there

5

will be an "identifiable, tangible, and material benefit to the estate" from these services. These fees should be denied without prejudice to being re-urged at the right time.

2. **The Korenek Appeal** - The Koreneks sued the Debtor pre-petition claiming that work that the Debtor had done in remodeling the Koreneks' home was not worth the approximate $250,000.00 they had paid him and that the Debtor had borrowed $175,000.00 from the Koreneks in regard to a Tarrytown transaction that he had not repaid. A settlement agreement was apparently reached pre-petition pursuant to which the Debtor was to pay the Koreneks $425,000.00[1] but the Debtor defaulted under that agreement. The Koreneks then obtained a summary judgment against the Debtor for $435,000.00[1] and Mr. Parsley was employed to represent the Debtor pre-petition with regard to post-judgment and appellate matters.

While the Motion for New Trial was pending, the Koreneks filed a garnishment action and trapped $277,500.00 that was held in a lawyer's trust account and in the Travis County District Clerk's registry. The Debtor and attorney Parsley allege that the Koreneks then agreed to settle the entirety of their claims for $175,000.00 which was to be paid from the $277,500.00 they had trapped with their garnishment. The settlement agreement was allegedly signed and the Koreneks then allegedly backed out of it. Lawsuits then

---

[1] As per Parsley's Fee Application.

abounded with regard to that issue and others both in state court and then here. Throughout the bankruptcy case, the Debtor, through both counsel Parsley and counsel Borsheim, has been fighting with the Koreneks in an attempt to enforce the alleged settlement. Ultimately, the Court stayed all pending litigation between the parties and required the Debtor to file a preference action against the Koreneks in order to avoid the Koreneks' garnishment lien since the estate and the Debtor were at all relevant times clearly insolvent. The Koreneks not only fought the preference action when the Debtor was in control, they also continued through their counsel to fight virtually every single action the Debtor's counsel took and regularly showed up in court attacking the character, not only of Debtor, but also Debtor's counsel. Ultimately, the case was converted to Chapter 7 and then the Koreneks rather quickly agreed to the relief sought in the preference suit with the only consideration coming to them being a payment of $10,000.00 to their counsel.

The fact that the litigation with the Koreneks took as much time and expense as it did is equally the fault of the Debtor and his counsel and the Koreneks and their counsel. The Koreneks now object to paying the fees requested by Debtor's counsel even though they were equally culpable in requiring the work to be done due to the manner in which they conducted themselves.

It would be inequitable and at odds with *Pro-Snax* to do anything other than to allow the fees requested with regard to all the Korenek matters for the appropriate counsel for the Debtor. Mr. Parsley, however, was employed to represent the estate only "in pending matters one (sic) appeal and the debtor's divorce". See Application to Employ Special Counsel, E. Lee Parsley. There was no appeal of the Koreneks' judgment. Therefore, to the extent Applicant Parsley expended work on any Korenek matters in this case, he did so as a volunteer as he was not so authorized by the pleadings through which he was employed.

Applicant Parsley's request for fees of $5,000.00 and expenses of $210.00 will be denied.

3. **The Divorce**. Applicant Parsley seeks $86,521.05 in representing the Debtor in his state court divorce post-petition. That amount apparently includes $12,226.30 in expenses and it also gives credit for a payment of $9,270.00 from his post-petition retainer. The question at hand is not whether the services rendered were necessary or produced a benefit. The question is who received the benefit – the estate or the Debtor. It seems logical that he who receives the benefit should pay the cost of obtaining the same.

Applicant Parsley states that at the conclusion of the divorce and in exchange for a future payment of $550,000.00 to his ex-spouse from the sale of his homestead, the Debtor was awarded the following property: (1) his homestead, (2) an entity known as O'Leary/Weaver,

8

Inc. – also in bankruptcy, (3) Mediterranean, Inc. – an entity of dubious value through which the Debtor does business, and (4) a substantial percentage of the parties' personal property. So where is the benefit to the estate?

There is only one primary source of benefit. The Debtor's interest in O'Leary/Weaver, Inc. has been sold with this Court's approval back to the Debtor for the payment of $50,000.00.

Applicant Parsley argues that the receipt by the Debtor of his homestead is beneficial to the estate as well because it was the Debtor's plan to use proceeds from the sale of the homestead to fund a 40% payment to unsecured creditors. However, much like the *Pro-Snax* facts, Debtors' counsel were repeatedly told by counsel for the Koreneks that they were uninterested in that proposal. The Tobins were equally uninterested. There was no way that the plan would ever have legs and reach the finish line. And, it did not. The receipt by the Debtor of his homestead – which according to his schedules has equity of approximately $2,500,000.00 – is of no benefit to this estate.

The Debtor's wife had filed a $1,000,000.00 claim in the case. As part of the divorce that claim has gone away. While that is a benefit, there is nothing in the record that reflects whether such claim had any viability at all.

Applicant Parsley reached an agreement with the Office of the United States Trustee with regard to their objection to his fee

9

application, one which would pay him one-half of his fees with regard to the divorce matter, approximately $38,000.00. That amount seems high since the only demonstrable benefit to the estate is $50,000.00 cash from the sale by the trustee of O'Leary/Weaver, Inc. That sale, the Court notes, was fought by the Koreneks tooth and nail. Their objections to both Parsley's and Borsheim's fees still pend as well.

Taking all of the foregoing into consideration, the Court believes that Applicant Parsley should be paid only $10,000.00 of his requested fees of $86,521.05 from the bankruptcy estate of the Debtor. This is especially true since he has already been paid $9,270.00 on this matter out of the initial retainer provided to him post-petition. The remainder of $76,521.05 should be paid by the Debtor himself. Applicant should not feel too bad for being paid only $10,000.00 because if the Court had determined that he be paid on a pro-rata basis: to-wit, a benefit of $2.5 million to the Debtor versus $50,000.00 to the estate, he would receive a total allowance of only $1,730.00. This would mean the application of $9,270.00 from the retainer to this matter would have to be reversed except to the extent of $1,730.00 and no further payments would be authorized.

10

## Summary of Parsley's Fees

For the foregoing reasons, fees requested on the Tobin matter are denied; fees requested with regard to the Korenek matters are denied; and fees requested in the amount of $86,521.05 for representing the Debtor in his state court divorce matter are allowed in the amount of $10,000.00 to be paid from the bankruptcy estate. The remainder of $76,512.05 should be paid by the Debtor himself.

## Borsheim's Fees

The Court is sensitive to Applicant Borsheim's division of his services between what is "mandatory"[2] under the Code with regard to representing Debtors in Chapter 11 and what might be viewed as "elective". The Court believes that is the only exception to the *Pro-Snax* pronouncement that all services rendered by persons representing the estate have the ability to show the identifiable, tangible and material benefit that has come from their efforts. With regard to "mandatory" work, the benefit must be presumed and the inquiry is one of the reasonableness of the fees charged on such mandatory matters.

The Court will make the analysis of Applicant Borsheim's fee request in the same manner that Supplemental Final Fee Application

---

[2] For services "necessary to the administration of the case." See 11 U.S.C. §330(a)(4)(A)(ii)(II).

11

lays it out.

First, however, certain comments in addition to those contained in the Prologue need to be made with regard to the nature of this case and the nature of the representation Applicant Borsheim undertook.  First, this was originally a Chapter 11 proceeding for an individual person.  This heightens the potential for conflict between the duty that counsel owes his client and the duty counsel owes creditors to maximize the estate, among other things.  This is because counsel – in representing an individual debtor – is primarily representing the equity owner.  A corporation or partnership, on the other hand,  is a separate legal entity from equity.  That is not the same with regard to representing an individual in Chapter 11 and therein lies the problem.

Second, Mr. Weaver did not conduct any business operations as an individual.  He did so through entities which he owns such as Mediterranean, Inc.  Further, in operating such entities, Mr. Weaver continued to be unsuccessful in either generating profits or avoiding controversies with the people for whom he did work.  It has been and still is very much Mr. Weaver's inability to produce any positive cash flow in his various business ventures as well as his propensity for breaching the contracts with the people for whom he does work which were both the primary causes of his need to seek relief under Chapter 11 and his inability to confirm a plan under Chapter 11.

12

Third, even though counsel is required to render some services that are "mandatory", the rendering of those services must be accomplished with a reasonable expenditure of time and at a reasonable hourly rate.

Fourth, this case is not overly complex other than the fact that Mr. Weaver apparently has the propensity to make the people with whom he does business very angry at him – generally because he has not lived up to his end of the bargain and created claims for damages and fraud against himself in the process.

What follows is the Court's analysis as per the breakdown set forth by Applicant Borsheim in his Supplemental Final Fee Application.

1. **Pre-Petition Matters**.  The amount of time spent in initial preparation of documents necessary for an emergency Chapter 11 filing seems high. $3,000.00 is allowed in this category as opposed to the $3,750.00 that was requested.

2. **Initial Case Administration**.  The increase in hourly rate from $300.00 per hour for the year 2004 to $350.00 per hour in 2005 seems inappropriate especially for case administration time. Further, the amount of time spent on these matters seem somewhat excessive.  Further, although the category is "Initial Case Administration", it runs from August 24, 2004 through the preparation of this fee application.  So, the category should be considered as "general" case administration.  The Court believes

13

that $10,000.00 is a reasonable and just fee in this category as opposed to the $12,255.00 requested.

3.   **Monthly Operating and Trustee Reports.** The 2005 rate is adjusted to $300.00.  The amount allowed is $930.00.

4.   **Non-Exempt Property Matters**.   The amount requested of $930.00 is allowed as reasonable.

5.   **Secured Creditor Matters, Stay Litigation and Adequate Protection**.  An analysis of the time spent on these matters reflects that they deal primarily with exempt property – a truck and the homestead of the Debtor which had a scheduled equity of $2.5 million.  The remainder of the time was spent either on the Scout Island Property which ended up having no value to the estate.  No fees should be allowed for the time spent dealing with the exempt property.  Some fees should be allowed with regard to the Scout Island Property since it is mandatory that counsel spend some time investigating whether property of the estate has value.  He should not be required to simply roll over.  Fees in the amount of $1,000.00 in that regard will be allowed in this category as reasonable as opposed to the $4,515.00 requested.

6.   **Review of Claims Held by Estate and Against Estate**.  The amount of $480.00 is reasonable and is allowed as requested.

7.   **Provide Creditors Estate Information, 2004 Exams, Etc**.  The requested amount of $870.00 is reasonable and is allowed.

8.   **Motion to Appoint a Trustee**.  The services with regard to

14

this motion filed by the Koreneks should be allowed in the amount requested since the Motion was completely without merit.  For that reason the hourly rate of $350.00 is approved.  The amount of the allowance is $3,185.00 as requested.

9.  **Estate Accounting and Tax Matters**.  The rate is adjusted to $300.00 per hour which makes an allowance of $1,580.00 reasonable as opposed to the $1,960.00 as requested.

10.  **Motion to Convert to Chapter 7**.  The Motion to Dismiss and/or Convert filed by the Tobins was granted and the case converted.  The attempt to resist this Motion was simply an attempt to keep Mr. Weaver in control of the case at a time when it was clear that he was continuing to incur liabilities beyond his ability to pay them, he had no cash flow with which to fund a plan, and the creditors were consistently resisting everything Weaver was trying to do in the case including propose a confirmable plan.  The estate received no benefit from this work and no fees will be allowed.

## PREFACE TO THE KORENEK MATTERS ANALYSIS

As stated above with regard to Applicant Parsley's Fee request for work performed on various Korenek matters, the amount of time generated by Debtor's counsel with regard to the Koreneks was due in large part to the actions of the Koreneks and their counsel. Because the $277,500.00 trapped by the Koreneks' garnishment was ultimately freed from their garnishment lien by action initiated by

the Debtor's counsel and because the amount of time that Debtor's counsel was required to spend on the various Korenek matters was directly related to the amount of time the Koreneks and their counsel spent – a lot of which was unnecessary – it would be unjust and out of line with *Pro-Snax* to do anything other than allow Applicant Borsheim's fees [with hourly rate adjustment only] as requested.

11. **Post-Petition Settlement Matters – Korenek**.  These fees are reasonable and will be allowed in the amount claimed of $2,700.90.

12. **Legal Research Relevant to Korenek Claim and Settlement**. These fees are reasonable and will be allowed in the amount claimed of $1,140.00.

13. **Removal of Korenek State Court Cases**.  This related to the Koreneks' state court lawsuits and the pre-petition garnishment action.  The Koreneks and the Debtor did not like each other, and the Koreneks were doing everything possible to make life as difficult as possible for Mr. Weaver, and vice-versa.  The strategy of removing the state court lawsuits, although one which the Court looked with disfavor upon, was part of the strategy of Mr. Weaver in dealing with the Koreneks – a strategy which ultimately ended in the Trustee's negotiation of a successful avoidance of the garnishment lien.  The amount requested in this category of $4,245.00 will be adjusted to reduce the 2005 time to $300.00 per

16

hour.  The allowance is $3,930.00.

14.  **Korenek Garnishment Issues – Estate Property**.  These services are allowable for the reasons stated above.  The only adjustment is to reduce the 2005 time to $300.00 per hour.  The amount allowed is $1,350.00.

15.  **Preference Action Against the Koreneks**.  This action was required by the Court to be taken as an attempt to get the issues between the Koreneks and the Debtor solved so that the case would have some chance of being reorganized.  Even though it should have been the first thing the Debtor did, the Court believes the action taken was absolutely necessary and beneficial to the estate.  The only adjustment will be to reduce the hourly rate to $300.00 per hour.  The allowance, therefore, will be in the amount of $11,760.00.

16.  **Korenek Objection to Discharge of Debt**.  By definition defending this type of action results in absolutely no benefit to the estate and is only of potential benefit to the Debtor.  None of these fees are allowed against the estate.

17.  **Pre-Petition Settlement Matters – Tobin**.  Although it is premature to judge whether any benefit will come from the appeal of the Tobin matter, it is necessary for counsel to acquaint himself with the issues.  The sum of $180.00 is allowed in this category.  The request for $140.00 in fees for telephone calls with Parsley with regard to the possible agreed order on the Scout Island sale

17

is simply not a part of this category and is disallowed.

18.  **Tobin Objection to Discharge of Debt**.  By definition defending this results in absolutely no benefit to the estate and is only of potential benefit to the Debtor.  None of these fees are allowed.

19.  **Business Operations and Related Financial Issues**.  The Debtor was not in business in his own name.  He was in business through various entities.  He had problems with his business operations in those entities which problems also affected this estate in a very negative manner.  There was absolutely no benefit from the Debtor's doing business; quite the contrary.  Regardless, counsel should be allowed to advise the Debtor in such regard even though the business produces no benefit.  The fee requested is allowed at the reduced rate of $300.00 per hour in the amount of $2,070.00 as opposed to the $2,415.00 requested.

20.  **Claims Review Analysis and Resolution**.  This is required by Debtor's counsel and will be allowed at the reduced rate of $300.00 per hour.  The amount allowed is $1,530.00 as opposed to the $1,785.00 requested.

21.  **Asset Disposition Scout Island Condo**.  There was no identifiable, tangible and material benefit to the unsecured creditors of this estate from the  work counsel expended on this matter in the sense that no money came into the estate.  However, secured liability was paid and no unsecured deficiency claim arose;

18

so, that is some identifiable, tangible and material benefit.  The time with regard to this matter is, however, excessive when viewed against the only benefit being the payment of a secured creditor. The real benefit was to the Debtor as the property was more an issue in his divorce case than in his bankruptcy case.  The amount of fees requested of $12,005.00.  The Court will allow fees of $3,000.00 – the remainder should be paid by Mr. Weaver individually.

22.  **Divorce Related Matters – Motion for Relief from Stay**. It is reasonable to pay Debtor's counsel for work done relating to making sure the Motion for Lifting of the Stay with regard to proceeding in state court with an on-going divorce be done in an appropriate manner which protects the interest of the bankruptcy estate and its creditors.  The amount of $3,510.00 is allowed as reasonable.

23.  **Divorce – Control of Temporary Orders – Conflict Over Jurisdiction**.  This is another category where the potential conflict of jurisdiction between the divorce court and the bankruptcy court over issues common to both proceedings requires oversight by the Debtor's counsel.  With an adjustment to the rate of $300.00 per hour for time expended in 2005, the amount found reasonable is $3,450.00, not the $3,645.00 requested.

24.  **Divorce – Settlement Attempts and Monitoring**.  With regard to the substance of the divorce settlement between the Debtor and his spouse, the Court cannot glean any benefit from the services as

19

outlined in the Supplemental Fee Application.  As noted with regard to Applicant Parsley's Application, the primary benefit of the divorce was overwhelmingly to Mr. Weaver and not to the estate. However, because some benefit came to the estate and because it is important that the estate's primary counsel monitor to some reasonable extent the settlement discussions and proceedings occurring in the divorce court, the amount of $1,500.00 will be allowed as reasonable in this category, not the $3,610.00 requested.

25.  **Divorce – Deed Clouding Title**.  This appears to be related to the Debtor's homestead so no benefit came to the estate from this work.  The benefit was to the Debtor individually.  No fees are allowed.

26.  **Strategic Planning, Disclosure Statement, Reorg. Plan Individually**.  All time sought in this matter is non-compensable by the estate.  As stated with regard to the same category for Applicant Parsley, the facts surrounding the preparation, filing and pushing of the plan in question is very close to the *Pro-Snax* facts. It was evident to the Court during this time period that neither the Koreneks nor the Tobins were interested in the 40% settlement the Debtor was proposing.[3]  Debtor's counsel states that they were getting mixed signals with regard to the creditors' interest in such

---

[3]  For reasons the Court could never understand these creditors apparently decided that a non-dischargeable judgment, if they obtain one and which if they do will most likely be of dubious collectibility, is better than receiving 40 cents on the dollar.

20

a proposal; however, the Court never received any mixed signals when they were in Court. Under *Pro-Snax* this work simply was of no benefit to the estate and cannot not be allowed.

### Summary of Borsheim's Fees

For the foregoing reasons, fees are allowed in the amount of $57,935.00, plus expenses in the amount of $1,960.39. The remainder is the obligation of the Debtor – not the estate.

An Order of even date with regard to each Applicant will be entered herewith.

### ###